494 P.2d 526

**J. HENRY JONES COMPANY, a Utah Corporation, Plaintiff and Respondent,**

**v.**

**Don SMITH, dba Smith Plumbing and Heating Co., et al., Defendant and Appellant.**

**No. 12533.**

Supreme Court of Utah.

Feb. 25, 1972.

Frank J. Allen, Clyde, Mecham & Pratt, Salt Lake City, for defendant-appellant.

George C. Morris, Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

J. Henry Jones Co. (hereinafter called Jones), supplier, sued defendant Don Smith, contractor, for a balance due on supplies and equipment which the latter had purchased for use in installing a water-treatment plant at Blanding, Utah. Upon a trial to the court it found that plaintiff had delivered equipment and supplies for a total price of $40,969.00, all of which had been paid except $9,085.13. On this the court allowed the defendant off-

sets for various claimed deficiencies in the sum of $2,509.84, and entered judgment for the remainder of $6,575.29.

Defendant appeals contending that the trial court should have allowed two further offsets: $1,433.92 for sales tax, and $2,123.80 damages defendant alleges it suffered because the plaintiff was late in delivering certain items of the equipment. The plaintiff having delivered the equipment, the defendant's claims of offset against the stated price are affirmative defenses upon which he has the burden of proof.[1]

On February 12, 1964 defendant Smith met with plaintiff Jones in Salt Lake City to arrange for the purchase of the equipment. In their discussion they used what are referred to as "quotation sheets" furnished by Jones's supplier, BIF Industries of Rhode Island. The equipment to be purchased was listed on such sheets, without stating the price of the individual items. Pursuant to their discussion, there was prepared on Jones's letterhead a "covering letter" or agreement relating to the supplying of the equipment by the plaintiff Jones, which was signed by the parties. At the bottom of this letter the defendant Smith wrote "all for a total of $40,969.00"; and on the carbon copy kept by Jones, the latter wrote "total, $40,969.00." There

1. Super Tire Market, Inc. v. Rollins, 18 Utah 2d 122, 417 P.2d 132; Vanadium Corp. of America v. Wesco Stores Co., 135 Colo. 77, (1957), 208 P.2d 1011.

was no discussion as to sales tax; and the dispute over it devolves upon the use of the words "total" in each of those phrases. Defendant contends that they were intended to include payment for the price of the equipment and *also* the sales tax. Plaintiff contends to the contrary.

█ In view of the lack of certainty which existed because of the absence of any express provision in the written contract concerning the sales tax, it was both necessary and proper for the trial court to look to extraneous sources to determine the intent.[2] This includes not only their testimony, but the customary practices in such transactions, and provisions of law bearing thereon.

█ The Utah Sales Tax, Chap. 15 of Title 59, U.C.A.1953, is entitled the "Emergency Revenue Act of 1933."[3] Sec. 59-15-5 U.C.A.1953 imposing the sales tax provides in part that:

. . . the vendor shall collect the tax from the vendee, . . .

The tax imposed is upon the "purchase price." In the definitions, Section 59-15-2 (j) says: "the term 'purchase price' means the price to the consumer exclusive of any tax imposed by the federal government or by this act." Upon an analysis of the act this court has heretofore declared that the sales tax is upon the purchase price, which is paid by the consumer [defendant Smith] and that the duty to collect it is upon the seller [plaintiff Jones].[4] It is, of course, true as defendant argues, that the parties may contract that the seller will absorb and pay the sales tax, and that such a covenant is binding and enforceable.[5] But in the absence of any such express agreement, the trial judge properly made his determination on the basis of the applicable law, and the usual course of business: That the purchase price is regarded as one thing, and the sales tax thereon is something else, which is normally added thereto. Inasmuch as upon conflicting evidence he was not persuaded that the plaintiff had agreed to pay the sales tax, his refusal to allow it as an offset in favor of the defendant cannot be upset.

2. Continental Bank and Trust v. Bybee et al., 6 Utah 2d 98, 306 P.2d 773.

3. Sec. 59-15-1. Short title.—This act shall be known, and may be cited, as the "Emergency Revenue Act of 1933." History: L.1933, ch. 63, § 1; C.1943 80-15-1.

4. See the case of Ralph Child Construction Co. v. State Tax Comm., 12 Utah 2d 53, 362 P.2d 422, Justice Wade states: "the primary obligation to pay the tax is on the ultimate consumer . . . ."

5. E. g. The case of B. L. Montague v. Somers, 94 Ga. 860, 96 S.E.2d 629 relied upon by the defendant said this: "The law places upon the purchaser the duty to pay the State sales tax and places upon the seller the duty to collect such taxes. There is nothing in the law which prevents the seller and the purchaser from including such tax in the total contract price"; see also Loeb v. Candias, (La.) 106 So.2d 485, (1948).

Defendant's claim of an offset for damages because of alleged late delivery of certain of the items of equipment is based on these facts: He had a completion date commitment to Blanding City of November 1, 1964, with a penalty clause. When he was unable to meet that date, he negotiated an agreement by which the City granted an extension on condition that he would have the plant manually operated until the automatic equipment could be installed. The cost incurred in the manual operation amounted to the $2,123.80 for which he seeks the offset against plaintiff. He urges that because the plaintiff was aware of the completion date, he must be deemed to have committed himself to timely delivery of the equipment so defendant could meet that obligation.

■ Considering the defendant's attempt to overturn the findings and judgment of the trial court in the light of the established rules of law, these observations are to be made: Where parties have discussed a business transaction and pursuant thereto have reduced an agreement to writing, it is generally to be assumed that their agreement is encompassed in the written document.[6] Even though both parties were aware of defendant Smith's completion date, they did not see fit to put anything concerning a delivery date in the written contract. In the absence thereof the only alternative open to the defendant to recover damages and the offset claimed was to persuade the trial judge that he had exacted from the plaintiff a separate promise for delivery by a specified time, and that the latter breached such covenant. Without discussing the evidence and the contentions of the parties in greater detail, it can be said in summary that upon the basis of conflicting evidence the trial court not only refused to find against the plaintiff on that issue, but made an affirmative finding to the contrary, that delivery of the equipment was made within a reasonable time.

Other arguments have been made by the respective parties. They have been considered, but in view of the disposition of the essential issues as indicated herein, it is deemed unnecessary and inadvisable to extend this decision by discussing them.

The defendant having failed to sustain his burden of proof with respect to the offsets he claims, the judgment for the balance due on the equipment he received is affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

6. Mawhinney v. Jensen, 120 Utah 142, 232 P.2d 769; State Bank of Sevier v. Am. Cement & Plaster Co., 80 Utah 250, 10 P.2d 1065; and 17A C.J.S. Contracts § 381.