Leon M. SEARCH, Plaintiff and Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, a corporation, Defendant and Respondent.

No. 17532.

Supreme Court of Utah.

June 16, 1982.

John L. Black, Salt Lake City, for plaintiff and appellant.

J. Clare Williams, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiff, a carman at Union Pacific Fruit Express Company (UPFE) appeals from the dismissal of his personal injury action against defendant Union Pacific Railroad

Company (Railroad) and seeks reversal of the judgment and remand for a new trial.

UPFE, a wholly owned subsidiary of the Railroad, is in the business of offering protective service railroad cars (refrigerator cars or "reefers") for use by various railroads and other refrigerator car companies in the United States and Canada. It also services the refrigerator cars at locations along the railroad lines. Most of the cars are owned by the Railroad and leased to UPFE. About 75% of UPFE's total revenue comes from business with railroads and refrigerator car companies other than the Railroad. Following an accident in which he was injured, plaintiff made claim for workmen's compensation as a UPFE employee and received benefits over an extended length of time. In a non-jury trial, the lower court determined on a factual basis that the plaintiff who worked for UPFE was not "employed by" the Railroad pursuant to the Federal Employers' Liability Act, 45 U.S.C.A. § 51, et seq.

The F.E.L.A. specifically allows recovery for an injury only if the plaintiff can prove that he was injured while employed by a railroad operating in interstate commerce. In *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 88 S.Ct. 1239, 20 L.Ed.2d 112 (1968) the United States Supreme Court specifically ruled that refrigerator car companies like UPFE, the subsidiary herein, are not "going railroads" within the meaning of F.E.L.A. and as intended by Congress. The courts have also refrained from extending F.E.L.A. coverage to employees of various other kinds of operations closely related to railroading activities. *Barnes v. The Chesapeake & Ohio R. Co., et al.*, Ky., 593 S.W.2d 510 (1978); *Williams v. Chicago & Eastern Illinois R. Co.*, 13 Ill.App.3d 596, 300 N.E.2d 766 (1973); *Hetman v. Fruit Growers Express Co.*, 346 F.2d 947 (3d Cir., 1965); *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205 (1919); *Robinson v. B. & O. R. Co.*, 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849 (1915).

■ However, the plaintiff relies upon *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974) which outlines three ways that a non-railroad employee can establish an employment relationship with a railroad in order to qualify under F.E.L.A. At the time of the accident, the non-railroad employee must be (1) the "borrowed servant" of the railroad, (2) acting for "two masters simultaneously", or (3) the "subservant" of the railroad. Plaintiff contends that as an employee of UPFE he was a "subservant" of the Railroad.

The "subservant" status is determined by whether a master-servant relationship exists between the railroad and its subsidiary. In other words, does the railroad "control or have a right to control" the non-railroad employee by "controlling or enjoying a right to control" his employer? Cooperation between parent and subsidiary companies does not necessarily imply control or a right to control. However, operational supervision at a direct or day-to-day level is an indicator of control. *Kelley*, supra; *Fawcett v. Missouri Pacific R. Co.*, 242 F.Supp. 675 (W.D.La.1963); *Gaulden v. Southern Pacific Co.*, 78 F.Supp. 651 (N.D. Cal.1948). Prior to the decision in *Kelley* but applicable to the issue of control, this Court enumerated five considerations in *Moleton v. Union Pacific R. Co. and Pacific Fruit Express Co.*, 118 Utah 107, 219 P.2d 1080 (1950) which were used as a test to determine who exercised control over the injured employee in his work: (1) Who selected and hired the employee? (2) Who paid his wages? (3) Who had the power and authority to discharge him? (4) Who controlled his daily work activities? (5) Whose work was he actually doing when the accident happened?

■ In the case before us, the Railroad is the answer to none of these questions. At the time of the accident the plaintiff was employed, supervised, and paid by UPFE. He was doing work for and on the premises of the refrigerator car company using its equipment. UPFE had the power to hire, promote and fire him. The Railroad enjoyed no direct supervisory power over him. The trial court determined that, based upon the evidence presented, sufficient control by the Railroad over UPFE did not exist to

establish a master-servant relationship and qualify the plaintiff as a "subservant" under F.E.L.A.

Further evidence as contained in the findings which support that determination is that although UPFE is a wholly owned subsidiary of the Railroad, it is a separately incorporated legal entity. In spite of limited interlocking between the Boards of Directors and the two top officers of the two companies being the same, both maintain completely separate supervisory staffs. UPFE maintains its own separate employee rosters, separate equipment, separate business facilities, and other properties.

Additionally, UPFE in its daily operation enters into a number of protective service contracts with the Railroad and other railroads. The trial court found that all business transactions between the Railroad and UPFE were "at arms length and in the same businesslike manner as are transactions between . . . [UPFE] and other companies with which it deals." There was no evidence that the terms of the contracts permitted supervision or control by the Railroad over UPFE in any way beyond parent-subsidiary cooperation.

▆▆▆ As we have frequently stated, in a non-jury trial it is the trial judge's prerogative to find facts—including judging the credibility of witnesses, weighing the reliability of other evidence, and drawing fairly derived and reasonable inferences therefrom. On appeal this Court reviews the evidence in a light most favorable to the trial court findings. Where there is competent evidence to support the findings this Court must sustain them. *Nance v. City of Provo,* 29 Utah 2d 340, 509 P.2d 365 (1973); *Parker v. Telegift Intern, Inc.,* 29 Utah 2d 87, 505 P.2d 301 (1973); *DeVas v. Noble,* 13 Utah 2d 133, 369 P.2d 290 (1962); Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

The plaintiff argues that the evidence suggests such intertwining between the two companies that UPFE is in reality nothing more than a "department" of the Railroad. For example, a railroad magazine characterizes employees of UPFE as "part of the Union Pacific family." The railroad's law department furnishes legal services to the subsidiary. UPFE's employees receive medical treatment at Railroad's hospitals. Health and dental plans are under the same association for both companies. Employees of both corporations have in certain instances "bump rights" against employees of the other corporation. However, such evidence (and other evidence which we have not mentioned) does not so compel a finding of "control". Other evidence in the record upon which the trial court relied well supports its finding of lack of control. Neither does such evidence erode the trial court's decision that a relationship contemplated by F.E.L.A. was not present in this case. As a result, the law in the *Kelley* case, supra, is valid and was appropriately applied here. This plaintiff simply did not qualify under the "subservant" category.

Other cases upon which the plaintiff relies such as *Smith v. Norfolk & Western R. Co.,* 407 F.2d 501 (4th Cir. 1969); *Schroeder v. Pennsylvania R. Co.,* 397 F.2d 452 (7th Cir. 1968); and *Baker v. Texas & Pacific R. Co.,* 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959) are distinguishable. *Smith* was overruled by *Kelley.* *Schroeder* was reversed on procedural errors of admissions of evidence to the jury and jury instructions while the present case was a non-jury trial. Also, the facts in *Schroeder* and this case differ. There, for instance, the employee worked on railroad property and was supervised by the railroad in the service he performed. Here, those facts were not present. In *Baker* the court held the issue of control should be allowed to go to a jury because opposing facts were submitted. In the present case, the trial was non-jury and the facts were weighed by the court; and, there is competent evidence in the record to support the trial court's determination.

The judgment is affirmed. Costs are awarded to the respondent.

HALL, C. J., STEWART, J., and ERNEST F. BALDWIN, Jr. and JAMES S. SAWAYA, District Judges, concur.

OAKS and DURHAM, JJ., do not partici-
pate herein.

BALDWIN and SAWAYA, District
Judges, sat.